UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-13-264-02 |
| MOHAMMED YASEEN | § § | |

## AGREED FACTUAL BASIS FOR PLEA OF GUILTY

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Martha Minnis, Assistant United States Attorney, files these facts forming the basis for the defendant's plea of guilty.

Defendant is pleading guilty because he <u>is</u> guilty of the charges contained in Counts 1, 2 and the notice of forfeiture in the indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. Defendant understands and agrees that the following facts, among others, would be offered to establish the defendant's guilt:

a. Beginning in March, 2008 through July 27, 2009, MOHAMMAD, using his company name of MAMSA, CORP., applied for and received two loans, the first a $950,000 Small Business Administration (SBA) guaranteed loan through Westbound Bank to purchase Mohammad YASEEN's Columbus, Texas motel (hereafter Passport Inn) beginning March 12, 2008 through funding on May 30, 2008, and the second a $510,000 loan for construction and updates to the motel, which Westbound approved on July 7, 2009. The

SBA loan guaranty program required the borrower (MOHAMMAD) to pay a "cash injection" to the seller (YASEEN), cash injection funds must not be borrowed and the source of the cash injection must be identified. The program also required that the borrower provide proof of his own assets, such as bank statements documenting money on hand, as well as debts owed.

## THE FIRST SBA LOAN

b. On or about March 12, 2008, MOHAMMAD entered into a real estate contract to buy the Passport Inn, Columbus, Texas from YASEEN for $1.2 million dollars. Later in March, 2008,YASEEN gave MOHAMMAD a series of pre-signed blank checks which were written for a total of $55,000; on April 11, 2008 MOHAMMAD bought a cashier's check for $40,000 payable to the Passport Inn (YASEEN) for part of the required cash injection. MOHAMMAD (buyer) provided a copy of the check to Westbound Bank, as proof he had paid the seller (YASEEN). Four days later, MOHAMMAD used a YASEEN check to issue $40,000 to himself. In all, MOHAMMAD(buyer) reported to the lender that he had paid $100,000 of his money to YASEEN(seller) in April and May, 2008, to satisfy the cash injection requirement. In reality, YASEEN (seller) provided MOHAMMAD (buyer) $55,000 of the $100,000 that was cash injection, in violation of the SBA loan guaranty program rules. All of these transactions occurred via checks and deposits to and from various bank accounts associated with MOHAMMAD and YASEEN; copies of these items were provided as proof to the lender. On May 28, 2008, MOHAMMAD signed an equity agreement affirming he paid $145,000 cash injection to YASEEN and the loan was closed by Westbound Bank, who initiated an interstate wire transfer (NY to Texas) of $950,000 on May 30, 2008.

c. Also in April, 2008, MOHAMMAD provided Westbound Bank monthly statements of his corporate bank account which contained false figures of the current balance; he also provided the bank with false and fraudulently created bank statements for another company MOHAMMAD owned (Star Financial) showing a large amount of cash. Upon acquiring the full bank

2

account, agents learned that the account and monies deposited in it belonged to YASEEN's company, Hinas Lodging Company.

d. Representatives of the lender have stated that these asset misrepresentations and the fact that funds from the seller (YASEEN) were used as MOHAMMAD's cash injection were material to their decision to fund (or not) this loan. MOHAMMAD has worked as a loan broker on other SBA guaranteed loans and knows the program requirements for cash injection and asset disclosure. YASEEN knew MOHAMMAD was a loan broker and had participated in other MOHAMMAD brokered loans by providing the buyer with cash funds to use as the cash injection in other SBA loans.

## THE SECOND SBA LOAN

e. On or about April 28, 2009, MOHAMMAD completed another Westbound Bank application for a SBA guaranteed loan to finance the renovation of the Passport Inn that was to be completed by YASEEN's construction business. As part of that application, MOHAMMAD submitted a personal financial statement falsely indicating that he had $48,000 cash available on hand and $12,000 in savings. On May 8, 2009, MOHAMMAD signed a commitment letter from Westbound Bank which loaned him $510,000, conditioned upon MOHAMMAD making a $57,000 cash injection (to be held in an account in MOHAMMAD's name). On or about July 7, 2009, MOHAMMAD's loan was approved to finance additional Passport Inn construction, subject to the cash injection. YASEEN, on July 21, 2009, issued MOHAMMAD's business, MAMSA, INC. a check for $23,000. The next day YASEEN issued another check for $27,000 which was endorsed by MAMSA, INC. On July 22, 2009, MOHAMMAD deposited YASEEN's $23,000 check along with the $27,000 check into his bank account and five days later, issued a check for $47,000 to the title company closing the construction loan, as part of the cash injection.

f. MOHAMMAD spoke with SBA federal agents on several occasions and admitted that a portion of the cash infusion was funds provided by YASEEN, who MOHAMMAD said had agreed to give MOHAMMAD

3

blank checks which he used so it would appear that he had the cash injection required when the lender evaluated his application. MOHAMMAD said YASEEN agreed with MOHAMMAD to write false notations in the memo section of the checks (e.g., commission, business consulting fees) to create the appearance that the money was provided for legitimate services, which it was not. MOHAMMAD admitted to he did not have sufficient funds to cover his cash injection or make it appear as if he had the money in his bank account, so he asked YASEEN for copies of his bank account statements, which YASEEN provided knowing that MOHAMMAD could not otherwise qualify for the initial loan. MOHAMMAD said he told YASEEN he was going to use YASEEN's bank statements showing over $100,000 on deposit, to present with his loan application. MOHAMMAD admitted he cut and pasted his name for YASEEN's name on YASEEN's bank statements and YASEEN knew that MOHAMMAD was doing this. MOHAMMAD admitted he submitted false documents to obtain the loan as well as knowingly used funds from the seller (YASEEN) to make it appear as if he was the source of the cash injection, in violation of SBA rules, and that YASEEN knowingly participated in the fraudulent scheme.

g. As a loan broker who had been involved in other SBA guaranteed loans, MOHAMMAD admitted to agents that he knew he made material misrepresentations, along with YASEEN, to the lender in order to obtain SBA guaranteed funds to purchase and thereafter renovate the Passport Inn. MOHAMMAD said that the bulk of the money from the two loans went to YASEEN and that the Passport Inn did not perform as well financially as YASEEN had told him, prior to the purchase.

h. On May 30, 2008, the lender sent via wire transmission $950,000 to an account in Houston, Texas, using the Federal Reserve Bank in New York to complete the transfer of loan funds. Defendant MOHAMMAD defaulted on the loan by

discontinuing payments, causing a loss of $1,038,707.90 to Westbound Bank and the SBA.

Filed in Houston, Texas on September 9, 2013.

Respectfully Submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF TEXAS

By: _____
Martha Minnis
Assistant United States Attorney
Telephone: 713-567-9348

Read and agreed to on September 9, 2013 in Houston, Texas

_____       _____
Mohammed Yaseen, Defendant      John Floyd, Attorney for Defendant

**CERTIFICATE OF SERVICE**

I sent a copy of this factual basis to defense counsel, John Floyd, via email, on Sept.6, 2013.

_____
Martha Minnis
Assistant United States Attorney